| IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA | |
|---|---|
| MMG INSURANCE,<br><div align="center">Plaintiff</div><br>v.<br><br>SCHMIDT LANDSCAPING, INC.,<br>GARY E. SCHMIDT,<br>THERESE SCHMIDT,<br>ALEJANDRO BRAVO CORIA, SR.,<br>JOSE SANTANA ALCARAZ, LUIS<br>HERNANDEZ SILVA, JOSE AREVALO<br>MENDOZA,<br><div align="center">Defendants</div> | DOCKET NO.<br><br>CIVIL ACTION - LAW<br><br>JURY TRIAL DEMANDED |
| **COMPLAINT SEEKING DECLARATORY JUDGMENT** | |

## Nature of the Litigation

AND NOW, comes Plaintiff, MMG Insurance Company ("MMG"), by and through its counsel, Margolis Edelstein, seeking a judgment from this Honorable Court declaring that MMG owes neither a duty to defend nor indemnify Schmidt Landscaping Inc., Gary E. Schmidt ("Mr. Schmidt"), Therese Schmidt ("Ms. Schmidt") or their employee, Alejandro Bravo Correa, Sr. ("Defendant Bravo"), collectively referred to hereinafter as ("Schmidt Defendants"), regarding any claims arising from a Complaint filed by Jose Santana Alcaraz, Luis Hernandez Silva, and Jose Arevalo Mendoza, in which they allege they were victims of human trafficking at the hands of, inter alia, the Schmidt Defendants, collectively referred to hereinafter as ("Human Trafficking Plaintiffs") in the Western District Court of Pennsylvania at Civil Action Docket No. 2:21-CV-691, hereinafter referred to as ("Human Trafficking Complaint "). A true and correct copy of this Human Trafficking Complaint is attached hereto as Exhibit A. In support of MMG's action for Declaratory Judgment, it avers the following:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 1337, and 2201 *et. seq.;* 18 U.S.C. § 1595(a), and 29 U.S.C. § 216(b).

      a.     This Court has jurisdiction pursuant to 28 U.S.C.S. §§ 2201-2202, because the Declaratory Judgment Act authorizes this Court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

      b.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because the claims for which the Schmidt Defendants seek coverage arise from and require interpretation of the laws of the United States.

      c.     This Court also has jurisdiction pursuant to 28 U.S.C. § 1331 because the  claims for which the Schmidt Defendants seek coverage arise from construction of the terms of contracts for employment of foreign non-agricultural workers pursuant to the federal H-2B program and, as such, arises under and requires interpretation of the laws of the United States.

      d.     This Court has jurisdiction pursuant to 28 U.S.C. § 1337 because the claims for which the Schmidt Defendants seek coverage arise from claims based upon and requiring interpretation of the laws of the United States regulating commerce.

      e.     This Court has jurisdiction over claims that arise from the Trafficking Victims Protection Act pursuant to 18 U.S.C. § 1595(a).

      f.     This Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 29 U.S.C. § 216(b).

      g.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a)to the extent state law is implicated because any state law issues arise out of the same operative facts as the claims arising under federal law and are so related to those claims that they "form part of the same case or controversy under Article III of the Unites States Constitution." 28 U.S.C. § 1367(a).

      h.     This Court has jurisdiction pursuant to 28 U.S.C § 1332(a) because the matter in controversy exceeds $75,000 and involves citizens of different states and citizens of a foreign state.

2.      The Schmidt Defendants are alleged to have actively conducted business in the Commonwealth of Pennsylvania and are, therefore, subject to this Court's personal jurisdiction.

3.      The Human Trafficking Plaintiffs have submitted to this Court's Jurisdiction for purposes of the underlying litigation and were engaged in conduct that took place in this Court's Jurisdiction and are, therefore, subject to this Court's personal jurisdiction.

4.      Venue for this action is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) as the conduct alleged in the Human Trafficking Complaint took place in Allegheny, Westmoreland and Washington Counties, Pennsylvania, all of which are within the Western District of Pennsylvania.

5.      Defendant Schmidt Landscaping, Inc. ("Schmidt Landscaping") is a Pennsylvania corporation with its principal office at 1521 Millers Run Road in McDonald, Pennsylvania.

6.      Defendants Theresa Schmidt and Gary Schmidt are alleged to be principals in Schmidt Landscaping. *See Exhibit A at Paragraphs 24-27.*

7.      Each of the Human Trafficking Plaintiffs are alleged to be Mexican citizens who entered the United States legally pursuant to H-2B visas and who worked for the Schmidt Defendants in 2019 in Western Pennsylvania.

8.      Plaintiff MMG is a Corporation conducting the business of insurance with a principal Place of Business in Portland, Maine. MMG regularly does business in Western Pennsylvania.

3

I.    **UNDERLYING ALLEGATIONS ASSERTED IN HUMAN TRAFFICKING COMPLAINT**

9.    The Human Trafficking Plaintiffs allege they were victims of intentional and criminal employment schemes and practices employed by Schmidt Landscaping, Inc., as well as by its principal, Gary E. Schmidt; his wife, Therese Schmidt; and a principal supervisory employee they identify as Defendant Bravo. *See Exhibit A.*

10.    The Human Trafficking Plaintiffs identify Defendant Gary Schmidt as the "principal owner, president and treasurer of Defendant Schmidt Landscaping." *Id. at Paragraph 24*.

11.    Additionally, the Human Trafficking Plaintiffs allege that Therese Schmidt is a "co-owner and corporate secretary of Defendant Schmidt Landscaping."  She is alleged to have determined the rate and method of wage payment, as well as having responsibility over "employee records" of Defendant Schmidt Landscaping.  *Id. at Paragraphs 27-28*.

12.    The Human Trafficking Plaintiffs identify Defendant Bravo as an "agent, supervisory employee and representative of Defendant Schmidt Landscaping."  *Id. at Paragraph 29*.

13.    In their Complaint, the Human Trafficking Plaintiffs allege that the Schmidt Defendants engaged in a broad scheme of illegal employment practices that entitle all the named Plaintiffs to compensatory and punitive damages as well as to attorney's fees.

14.    The Human Trafficking Plaintiffs allege that Gary Schmidt, Therese Schmidt, and Defendant Bravo ("Schmidt Defendants") "used violence to cause bodily harm to Plaintiffs" by, among other things, shocking "Plaintiffs with live electrical wires

while Plaintiff slept and [driving] landscaping machines into Plaintiffs while Plaintiffs worked." *Id. at Paragraph 4*.

15.   The Human Trafficking Plaintiffs allege that the Schmidt Defendants prohibited Plaintiffs from leaving their worksite or their residence on their own.  *Id. at Paragraph 5*.  Collectively, Plaintiffs assert that the Schmidt Defendants engaged in human trafficking in violation of state and federal criminal law.  *Id. at Paragraph 7.*

16.   The Human Trafficking Plaintiffs allege that Schmidt Landscaping is an "employer" and further allege that "at all times relevant to this action, Plaintiffs were employees of Defendant Schmidt Landscaping, Gary Schmidt, Therese Schmidt, and Bravo … within the meaning of the Fair Labor Standards Act and other similar Pennsylvania employment protection laws." *Id. at Paragraph 30.*

17.   The Human Trafficking Plaintiffs allege that Schmidt Landscaping has utilized foreign immigrant labor since 2010 or earlier.  *Id. at Paragraph 74*.  However, much of the focus of Plaintiff's Complaint is upon the years 2018 through 2019*.  Id. at Paragraphs 52-57.  See also Complaint at Exhibits A & B.*

18.   The Human Trafficking Plaintiffs allege that Schmidt Landscaping entered into separate seasonal contracts with Plaintiff Hernandez from 2011 through 2016 and 2018 to 2019, pursuant to the federal program allowing for immigrant labor in the United States.  *Id. at Paragraph 52.*

19.   The Human Trafficking Plaintiffs allege that federal employment law provides that all contracts of employment pertaining to immigrant labor are subject to "minimum contractual terms." *Id. at Paragraph 58.*

20.    The Human Trafficking Plaintiffs allege that among these minimum terms are terms providing that the employer "has not and will not (and has not and will not cause another person to) intimidate, threaten, restrain, coerce, blacklist, discharge, or in any other manner discriminate against any person who, with respect to … any other Department of regulation promulgated thereunder has … exercised or asserted on behalf of himself/herself or others any right for protection."   The Human Trafficking Plaintiffs allege multiple violations of these and other rights and protections afforded under state and federal law. *Id. at Paragraph 58(21).*

21.    Other violations alleged against Schmidt Landscaping include that it engaged in illegal employee sharing among the various Defendants.   *Id. at Paragraph 79.*

22.     Additionally, the Human Trafficking Plaintiffs allege that they were neither paid at the rates promised for all the hours worked, or for overtime as required by state and federal law.   *Id. at Paragraphs 89-97.*

23.    Further, the Human Trafficking Plaintiffs allege that they were threatened if they did not work hard enough with a reduction in pay, with deep rotation, and/or with future work.   *Id. at Paragraphs 99-100.*   The Human Trafficking Plaintiffs also allege that they were threatened with deportation and with physical harm to their families if they tried to leave their employment.   *Id. at Paragraphs 101-104.*

24.    The Human Trafficking Plaintiffs allege they were promised regular trips to the grocery store, but that this was less frequent than promised.   Plaintiffs allege that they were charged a rental fee that was not disclosed in violation of federal law.   Further,

6

the Human Trafficking Plaintiffs allege that their freedom and liberty to visit and receive guests was restricted. *Id. at Paragraphs 110-119.*

25.    Plaintiff Hernandez alleges illegal confiscation of his passport and insufficient pay.   Similar allegations are asserted by Defendant Alcaraz, who also alleges physical harm by way of electric shocks while he was asleep.   All the Human Trafficking Plaintiffs allege threats of deportation.   Plaintiff Arevalo Mendoza alleges physical abuse by way of humiliation, grabbing of buttocks, and having a metal rod thrown at him, injuring his finger.   This Plaintiff also alleges that he was intentionally hit with a large piece of machinery. *Id. at Paragraphs 175-177.*

26.    The Schmidt Defendants are alleged to have violated state and federal law by engaging in a form of human trafficking, otherwise known as "peonage," which means to engage in practices that coerce human labor by binding the laborers into servitude by debt. *See 18 U.S.C. § 1581 et seq.*   More specifically, the Human Trafficking Plaintiffs allege that the Schmidt Defendants subjected them to forced labor in violation of 18 U.S.C. § 1589.   Section 1589 provides as follows:

(a)    Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means—

(1)    by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
(2)    by means of serious harm or threats of serious harm to that person or another person;
(3)    by means of the abuse or threatened abuse of law or legal process; or
(4)    by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint, shall be punished as provided under subsection (d).

7

**(b)**     Whoever knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means, shall be punished as provided in subsection (d).

**(c)**     In this section:

   **(1)**     The term "abuse or threatened abuse of law or legal process" means the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.

   **(2)**     The term "serious harm" means any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

**(d)**     Whoever violates this section shall be fined under this title, imprisoned not more than 20 years, or both. If death results from a violation of this section, or if the violation includes kidnaping, an attempt to kidnap, aggravated sexual abuse, or an attempt to kill, the defendant shall be fined under this title, imprisoned for any term of years or life, or both.

27.     The Schmidt Defendants are also alleged to have violated Pennsylvania state law in connection with the alleged human trafficking by violating, *inter alia*, 18 Pa. C.S. § 3011.18 Pa C.S. 3011 § which provides that:

Trafficking Individuals

**(a)**     **Offense defined.--** A person commits a felony:

   (1)     of the first degree if the person recruits, entices, solicits, advertises, harbors, transports, provides, obtains or maintains an individual if the person knows or recklessly disregards that the individual will be subject to sexual servitude;

8

(2)    of the first degree if the person knowingly benefits financially or receives anything of value from any act that facilitates any activity described in paragraph (1);

(3)    of the second degree if the person recruits, entices, solicits, advertises, harbors, transports, provides, obtains or maintains an individual if the person knows or recklessly disregards that the individual will be subject to labor servitude; or

(4)    of the second degree if the person knowingly benefits financially or receives anything of value from an act which facilitates any activity under paragraph (3).

28.    The Human Trafficking Plaintiffs allege that they were victims of illegal employment sharing at the hands of the Schmidt Landscaping Defendants.

29.    The Human Trafficking Plaintiffs allege that though they had employment contracts with different Defendants, all of them were sent at one point or another to the Schmidt Landscaping Defendants, where they were subjected to forced labor. *Id. at Paragraph 208.*

30.    Importantly, the Human Trafficking Plaintiffs allege that the Schmidt Defendants "***knowingly*** obtained the Human Trafficking Plaintiffs' labor services by means of force." (Emphasis added). *Id. at Paragraph 209.*

31.    The Human Trafficking Plaintiffs further allege that the Schmidt Defendants "***knowingly*** threatened Plaintiffs with serious harm in order to obtain Plaintiffs' labor or services in violation of 18 U.S.C. § 1589(a)(2)." (Emphasis added). *Id. at Paragraph 210.*

32.    The Human Trafficking Plaintiffs further allege that the Schmidt Landscaping Defendants "knowingly abused and/or threatened to abuse the law or legal process including the federal immigration enforcement system … in order to obtain

plaintiff's labor or services" in violation of 18 U.S.C. § 1589(a)(3). (Emphasis added).   *Id. at Paragraph 211.*

33.     The Human Trafficking Plaintiffs also allege that the Schmidt Defendants "***knowingly*** coerced Plaintiffs to labor by means of a scheme, plan, or a pattern intended to cause Plaintiffs to believe that if they did not perform labor or services, they would suffer serious harm or physical restraint in violation of 18 U.S.C. § 1589(a)(4). (Emphasis added).

34.     The common theme to all these claims is the Human Trafficking Plaintiffs' contention that that the Schmidt Defendants engaged in conduct arising from a landscaping business that Plaintiffs contend was illegal and indeed criminal in nature and that this conduct brought about harm to Plaintiffs and financial benefit to the Schmidt Defendants. A summary of each Count in Plaintiffs' Complaint follows.

## II.     CLAIMS FOR RELIEF IN THE HUMAN TRAFFICKING COMPLAINT

35.     Paragraphs 1 through 34 hereof are incorporated herein by reference as if set forth in full.

### COUNT I:   Trafficking Victims Protection Act – Forced Labor

36.     The Human Trafficking Plaintiffs allege the Schmidt Defendants engaged in illegal conduct resulting in forced labor in violation of the Trafficking Victims Protection Act found at 18 U.S.C. § 1851 et seq. See Human Trafficking Complaint at Count I.

37.     In this connection, the Human Trafficking Plaintiffs allege that the Schmidt Defendants subjected Plaintiffs to forced labor. In this Count, The Human Trafficking Plaintiffs allege that the Schmidt Defendants engaged in labor sharing that they allege is

also in violation of this same federal law. Id.

38.     The Human Trafficking Plaintiffs also allege that the Schmidt Defendants engaged in the following intentional conduct:

- "Defendants knowingly obtained Plaintiffs' labor or services by means of force and/or threats of force…"
- "Defendants knowingly threatened Plaintiffs with serious harm in order to obtain Plaintiffs' labor or services…"
- "Defendants knowingly abused and/or threaten to abuse the law or legal process including the federal immigration enforcement system…"
- "Defendants knowingly coerced plaintiffs to labor by means of a scheme, plan or pattern intended to cause the Plaintiffs to believe that if they did not perform the labor services, they would suffer serious harm or physical restraint…"

Id. at Paragraphs 207-213.

**COUNT II:   Trafficking Victims Protection Act – Human Trafficking**

39.     In Count II of their Complaint, the Human Trafficking Plaintiffs allege that the Schmidt Defendants engaged in human trafficking in violation of 18 U.S.C. § 1590. See Human Trafficking Complaint at Count II.

40.     The Human Trafficking Plaintiffs allege that the Schmidt Defendants violated 18 U.S.C. § 1590 which makes it a crime to recruit, transport, harbor, provide, and/or obtain individuals for purposes of subjecting them to forced labor and involuntary servitude.  *Id. at Paragraph 217*.

41.     The Human Trafficking Plaintiffs seek punitive damages for the harm inflicted upon them as a function of this particular form of harm caused by the Schmidt Defendants' conduct.

**COUNT III: Trafficking Victims Protection Act – Unlawful Conduct with Respect to Documents**

42.     The Human Trafficking Plaintiffs also allege that the Schmidt Defendants violated the Trafficking Victims Protection Act, 18 U.S.C. § 1581 et seq., which makes it a crime to restrict or use an immigrant's travel documents to further a practice or scheme involving peonage.   See Human Trafficking Complaint at Count III, *Paragraph 224.*

43.     In this regard, Plaintiffs allege that the Schmidt Defendants "knowingly concealed and/or possessed Plaintiff Hernandez and Plaintiff Santana's passports for purposes of forcing them to engage in labor on their behalf in violation of 18 U.S.C. § 1589 and 1590. *See Human Trafficking Complaint at Count III.*

44.     Once again, Plaintiffs allege both compensatory and punitive damages, as well as attorney's fees, for these violations. *Id.*

**COUNT IV:   Involuntarily Labor Servitude**

45.     The Human Trafficking Plaintiffs allege that the Schmidt Defendants violated Pennsylvania law by subjecting Plaintiffs to involuntary labor servitude in violation of 18 Pa. C.S. Sections 1311 and 1312.   See Human Trafficking Complaint at Count IV.

46.     The Human Trafficking Plaintiffs seek actual damages, punitive damages, and treble damages asserting that the Schmidt Defendants' acts were willful and malicious.   *Id. at Paragraphs 228-235.*

## COUNT V:   Breach of Contract

47.    The Human Trafficking Plaintiffs allege that many of the unlawful employment practices engaged in by the Schmidt Defendants were made possible by annual contracts entered into by the Schmidt Defendants.   *See Human Trafficking Complaint, Count V at Paragraphs 240-250.*

48.    The Human Trafficking Plaintiffs allege that these contracts were breached when the Schmidt Defendants failed to pay appropriate wage rates, comply with state and federal law with regard to pay practices, and by "intimidating, threatening, restraining, coercing, and otherwise discriminating against Plaintiffs for exercising and asserting their employment rights."   *See Human Trafficking Complaint, Count V. at Paragraphs 236-250.*

## COUNT VI:   Fair Labor Standards Act (FLSA)

49.    Once again, the Human Trafficking Plaintiffs allege that the Schmidt Defendants engaged in violations of federal employment law by, inter alia, "knowingly failing to compensate Plaintiffs at a rate of one and one-half times their regular hourly wage for all hours worked in excess of 40 hours per week.   *See Human Trafficking Complaint, Count VI at Paragraphs at Paragraph 271.*

50.    The Schmidt Defendants are also alleged to have failed to keep appropriate records.   Specifically, Plaintiffs allege that they routinely worked over 70 hours per week and they only received paychecks from the Schmidt Landscaping Defendants for approximately 40 hours of work per week.   *See Human Trafficking Complaint, Count VI at Paragraphs at Paragraph 94.*

51.     The Human Trafficking Plaintiffs seek unpaid wages, liquidated damages, costs and attorney's fees pursuant to 29 U.S.C. Sections 203 et seq. *See Human Trafficking Complaint, Count VI.*

## COUNT VII Pennsylvania Minimum Wage Act

52.     The Human Trafficking Plaintiffs claim that the Schmidt Defendants violated the Pennsylvania Minimum Wage Act which requires that covered employees be compensated for every hour worked in a workweek and that they receive minimum wage not less than the federal minimum wage. *See Human Trafficking Complaint, Count VII at Paragraphs at Paragraph 280. See 43. P.S. Section 333.104 (a)-(a.1).*

53.     The Schmidt Defendants are also alleged to have violated the Pennsylvania Minimum Wage requirement that employees receive overtime compensation of not less than 1 ½ times the employee's regular rate of pay for all hours worked over 40 in a workweek. *See Human Trafficking Complaint, Count VII at Paragraph 281.*

## COUNT VIII:   Pennsylvania Wage Payment and Collection Law

54.     The Schmidt Landscaping Defendants are alleged to have violated the Pennsylvania Wage Payment and Collection Law. *See Human Trafficking Complaint, Count VIII.*

55.     The Human Trafficking Plaintiffs allege that this law requires that employers notify employees of the rate of pay at the time of hiring and notify employees of any change in the rate of pay prior to the time of the change of pay.   *Id. 42 P.S. § 260.4. See Human Trafficking Complaint, Count VIII at Paragraphs 284-290.*

14

56.    The Human Trafficking Plaintiffs allege that the Schmidt Defendants deducted Plaintiffs' wages for items including pre-employment expenses, equipment, and rent, in violation of applicable state law.   As a consequence, Plaintiffs allege that they are entitled to unpaid wages and liquidated damages in the amount of $500.00 per pay period pursuant to 43 P.S. §§ 260.9(a)-260.10.   Id.

### COUNT IX:   Assault and Battery

57.    The Human Trafficking Plaintiffs alleged they were victims of assault at the hands of Defendant Gary Schmidt and Defendant Bravo and seek damages for the intentional touching and harm created thereby.   These damages include punitive damages. *See Human Trafficking Complaint, Count IX at Paragraphs 291-302.*

### COUNT X:   Negligent Hiring, Retention and Supervision

58.    The Human Trafficking Plaintiffs allege they are entitled to damages arising from the Schmidt Landscaping Defendants' negligent hiring, retention, and supervision. *See Human Trafficking Complaint, at Count X.*

59.    In this regard, the Human Trafficking Plaintiffs allege that the Schmidt Defendants "knew or should have known that employment at Defendant Schmidt Landscaping might create a situation where violence would harm its employees, including Plaintiffs."   *See Human Trafficking Complaint, Count X at Paragraph 306.*

60.    The Human Trafficking Plaintiffs allege a failure to "properly screen their employees who were given supervisory authority; a failure to maintain proper supervision of their premises; a failure to train; a failure to implement reporting systems for harassment and misconduct, and a failure to protect Plaintiffs from violent and harassing

acts of Defendant Bravo, which Defendants knew or should have known were likely to occur." *Id. at Paragraph 307.*

## COUNT XI: Negligence

61.     In a four Paragraph Count of their Complaint, the Human Trafficking Plaintiffs allege that the Schmidt Defendants had a "duty to make sure Plaintiffs were safe on their properties and premises including at their daily job sites*." See Human Trafficking Complaint, Count XI at Paragraph 313.*

62.     The Human Trafficking Plaintiffs further allege that Schmidt Landscaping breached its duty of care to Plaintiffs when "tortious acts were committed at the workplace by Defendants Gary Schmidt and Bravo against Plaintiffs for purely personal reasons outside the scope of employment." *Id. at Paragraph 314.*

63.     No additional facts are alleged in support of the conclusory allegations set forth in this count of the Human Trafficking Complaint. *See Human Trafficking Complaint at Count XI.*

## COUNT XII: Unjust Enrichment

64.     The Human Trafficking Plaintiffs claim that by paying below the required minimum wage and overtime rates, the Schmidt Defendants received artificially cheap labor. See Human Trafficking Complaint, Count XII.

65.     Once again, the Human Trafficking Plaintiffs plead no additional facts in support of this claim. *See Human Trafficking Complaint, Count XII at Paragraphs 316-321.*

66.     Against the backdrop of the foregoing claims, the following Policy provisions may limit and/or exclude coverage.

## III.     **RELEVANT POLICY PROVISIONS**

67.     MMG issued a Policy of Insurance identified by Policy No. SC 12188529 to Schmidt Landscaping Inc. in which Schmidt Landscaping Inc. is identified as the named insured (hereinafter "Policy"). A true and correct copy of the Policy is attached hereto as Exhibit B. No other policy of insurance was issued by MMG to the Schmidt Defendants.

68.     The following Policy definitions may have significant implications to the coverage afforded under the Policy:

p.  **Personal And Advertising Injury**

"Personal and advertising injury":

(1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

\*       \*       \*

F.  **Liability And Medical Expenses Definitions**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

\*       \*       \*

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

17

\*       \*       \*

(3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

\*       \*       \*

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

\*       \*       \*

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

\*       \*       \*

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

\*       \*       \*

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

\*       \*       \*

18

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

<p style="text-align:center">*       *       *</p>

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

<p style="text-align:center">*       *       *</p>

### C.  Who Is An Insured

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

<p style="text-align:center">*       *       *</p>

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

\*   \*   \*

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

*See Exhibit B at pages 58-61.*

69.     The Policy provides liability coverage for bodily injury, property damage, and/or personal and advertising injury as follows:

**SECTION II – LIABILITY**

**A. Coverages**

   **1. Business Liability**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Paragraph **D.** Liability And Medical Expenses Limits Of Insurance in Section **II** – Liability; and

**(2)** Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements or medical expenses.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Paragraph **f.** Coverage Extension – Supplementary Payments.

**b.** This insurance applies:

**(1)** To "bodily injury" and "property damage" only if:

**(a)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(b)** The "bodily injury" or "property damage" occurs during the policy period; and

**(c)** Prior to the policy period, no insured listed under Paragraph **C.1.** Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.

**(2)** To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

21

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **C.1.** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **C.1.** Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

    **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

*See Exhibit B at page 51.*

70.     In addition to the foregoing definitions, the Policy contains Endorsement BP2000 08 10, which provides as follows:

**DEFINITION OF OCCURRENCE**

**This endorsement modifies insurance provided under the following:**

**Section II – LIABILITY**

**Subsection F.  Liability And Medical Expenses Definitions**

**Definition 13, "Occurrence", is hereby deleted in its entirety and replaced with the following:**

13.  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, including "property damage" to "your work" arising out of "your work" or any part of it, when such "property damage" is included in the definition of "products-completed operations hazard" and the damaged work or the work out of which it arises was performed on your behalf by your subcontractor.

*See Exhibit B at page 103.*

71.     In addition to the foregoing, the following Exclusions have bearing upon MMG's coverage obligations.

This insurance does not apply to "bodily injury" or "personal and advertising injury" to:

**(1)**  A person arising out of any:

   **(a)**  Refusal to employ that person;

   **(b)**  Termination of that person's employment; or

   **(c)**  Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

The following policy exclusions may have significant implications to the coverage afforded under the Policy:

B.    Exclusions

a. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

\*       \*       \*

24

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

\*        \*        \*

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

## EMPLOYMENT – RELATED PRACTICES EXCLUSION

The following exclusion is added to Paragraph **B.1. Exclusions – Applicable To Business Liability Coverage** in **Section II** – **Liability:**

This insurance does not apply to "bodily injury" or "personal and advertising injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

\*        \*        \*

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraph **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

\*          \*          \*

**r. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

*See Exhibit B at page 59.*

72.     For the reasons set forth below, MMG asserts that it owes neither a duty to defend or indemnify the Schmidt Defendants for the claims asserted in the Human Trafficking Complaint.

## IV.   MMG OWES NO DUTY TO DEFEND THE SCHMIDT DEFENDANTS FOR THE CLAIMS ASSERTED IN THE HUMAN TRAFFICKING COMPLAINT

73.     Paragraphs 1 through 64 hereof are incorporated herein by reference as if set forth in full.

74.     The proper interpretation of an insurance contract is a question of law which requires the court to ascertain the intent of the parties as manifested by the language of the written agreement.

75.     Where the language of the insurance contract is clear and unambiguous, a court must give effect to that language.

76.     In deciding whether a policy provision is ambiguous or unambiguous, a court should read the policy with an eye toward avoiding ambiguities and to take care not

to torture policy language to create uncertainties where none exist.

77.   In interpreting insurance contracts, a clear and unambiguous insurance contract provision must be given its plain meaning unless to do so would be contrary to a clearly expressed public policy.   Additionally, a court should not distort the meaning of the language of an insurance contract provision or resort to a strained contrivance in order to find an ambiguity.

78.   When an insurance company relies upon an exclusion contained in the policy as a basis for denial of coverage and a refusal to defend, the insurer has asserted an affirmative defense and, accordingly, bears the burden of proving such a defense. *Prudential Prop. & Cas. Ins. Co. v. Bryan*, 2005 Phila. Ct. Com. Pl. LEXIS 23 (Jan. 19, 2005) *citing D'Auria v. Zurich Ins. Co.*, 352 Pa. Super. 231, 507 A.2d 857, 859 (1986).

79.   With regard to coverages under a policy, Pennsylvania law is well-settled that an insurer's duty to defend is a distinct obligation, different from and broader than its duty to indemnify.   However, even with respect to the broader duty to defend, an insurer only has a duty to defend those claims that are covered by the policy.

80.   The obligation to defend is determined by the factual allegations that appear on the face of the underlying Complaint. However, the cause of action that a complaint pleads is ***not determinative*** of whether coverage has been triggered.   Instead, it is necessary to look at the well pled factual allegations contained in the Complaint. Against this well-established backdrop, MMG respectfully asserts that it owes no duty to defend or indemnify the Schmidt Defendants for the reasons that follow.

A.    **The Factual Allegations Do Not Constitute an Occurrence Under the Policy.**

81.    When the well pled facts set forth in Plaintiffs' Complaint are viewed against the backdrop of the cases cited above, Plaintiffs' factual allegations do not constitute an "occurrence" under the Policy.

82.    The existence of an "occurrence" is a condition precedent to coverage under the Policy. As discussed below, the factual allegations asserted in the Human Trafficking Complaint assert "knowing" "threatening," "coercive," even criminal conduct, which takes place in the context of an employment relationship between the Schmidt Defendants and Plaintiffs.

83.    As defined in the Policy, an "occurrence" means an accident.   Moreover, it means an accident which occurred during the policy period. *See Exhibit B at page 65.*

84.    Although the word "accident" is not a defined term in the Policy, as stated above, In Pennsylvania, courts interpret contracts according to the plain meaning of their terms.

85.    Words of common usage in an insurance policy are to be construed accordingly, in their natural, plain and ordinary meaning.

86.    The conduct alleged in the Human Trafficking Complaint lacks the degree of fortuity required to constitute an "occurrence" under Pennsylvania law.

87.    The Human Trafficking Plaintiffs' repeated use of the word "knowingly" combined with the repeated reference to various criminal statutes purportedly violated by the Schmidt Defendants in furtherance of the alleged "campaign of coercion and violence" leaves no room to interpret the acts of the Schmidt Defendants as an "occurrence."

28

88.     In addition to the foregoing, acts of employment discrimination do not constitute an "occurrence" under a general liability policy. Such conduct is intentional in nature and thus is not sufficiently fortuitous to constitute a covered occurrence under a general liability policy such as that issued in the instant case by MMG.

WHEREFORE, MMG respectfully requests that this Honorable Court issue an Order declaring that MMG owes neither a duty to defend or indemnify the Schmidt Defendants because the well pled facts alleged in the Human Trafficking Complaint are insufficient to constitute an "occurrence" as that term is defined in the Policy issued by MMG.

**B.     The Conduct Pled is in the Nature of Criminal Acts that Involve Expected or Intended Harm Caused by or At the Direction of the Schmidt Defendants Precluding Both the Duty to Defend Or Indemnify the Schmidt Defendants**

89.     Paragraphs 1 through 80 hereof are incorporated herein by reference as if set forth in full.

90.     The Human Trafficking Plaintiffs have pled conduct that constitutes crimes under both state and federal law. Many of these crimes are felonies.

91.     Additionally, Plaintiffs have alleged assault and battery with respect to Defendants Bravo and Schmidt. These claims are likewise criminal in nature and certainly involve conduct that, as pled, is expected and intended from the standpoint of the Schmidt Defendants allegedly involved.

92.     Under Pennsylvania law, assault and battery are not considered "accidents."

93.     As such, crimes and intentional torts are excluded from coverage relieving the insurer from the duty to defend.

94.     Taken as a whole, the allegations of Plaintiffs' Complaint, establish that the Schmidt Defendants engaged in a "scheme" involving "knowing" criminal conduct. These allegations support application of the Policy provision excluding coverage for harm that is "expected or intended from the standpoint of the insured."

WHEREFORE, MMG respectfully requests that this Honorable Court issue an Order declaring that MMG owes neither a duty to defend or indemnify the Schmidt Defendants because the well pled facts alleged in the Human Trafficking Complaint support application of the Policy provision excluding coverage for harm that is "expected or intended from the standpoint of the insured."

**C.      The Conduct Pled is Excluded from Coverage by the Personal and Advertising Injury Exclusion**

95.     The acts allegedly committed by the Schmidt Defendants also invoke the Personal and Advertising Injury Exclusion under Policy Section B(1)(p)(1) that excludes coverage "caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

96.     The harm allegedly sustained by the Human Trafficking Plaintiffs as a consequence of these acts involves fundamental human rights that were "knowingly" violated by the Schmidt Defendants. *See Exhibit A at paragraphs 209-212.*

97.     Plaintiffs further allege that "Defendants knowingly coerced plaintiffs to labor, by means of a scheme, plan or pattern intended to cause the Plaintiffs to believe that, if they did not perform labor or services, they would suffer serious harm or physical

restraint….” *Id. at Paragraph 212.*

98.     Accordingly, the conduct alleged in the Human Trafficking Complaint precludes coverage both because it fails to plead conduct that could reasonably be construed as an “occurrence” and because it describes conduct that resulted in harm “caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict “personal and advertising injury.”   *See Exhibit B at page 58.*

WHEREFORE, MMG respectfully requests that this Honorable Court issue an Order declaring that MMG owes neither a duty to defend or indemnify the Schmidt Defendants because the well pled facts alleged in the Human Trafficking Complaint support application of the Policy provision excluding coverage for harm “caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict “personal and advertising injury.” *See Exhibit B at page 58.*

**D.     The Employer’s Liability and the Employment-Related Practices Exclusions Preclude Coverage for Plaintiff’s Claims.**

99.     The Policy contains an Employment-Related Practices Exclusion that precludes coverage for “bodily injury” or “Personal and advertising injury” to any person arising out of any “employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person.” *See Exhibit B.*

100.   Policy Exclusions of this nature preclude coverage for claims involving sexual discrimination.

101.    The Human Trafficking Complaint alleges conduct allegedly committed by the Schmidt Defendants arising from an employment relationship.

102.    With the arguable exception of the Negligence Count of Plaintiffs' Human Trafficking Complaint, every claim asserted alleges a violation of Plaintiffs' rights by virtue of an "employment-related practice" in the nature of coercion, reassignment, harassment, humiliation, and discrimination. *See Exhibit A.*

103.    Accordingly, to the extent that the Human Trafficking Plaintiffs have a claim for bodily and/or personal injury under the Policy, it is precluded by the Employment-Related Practices Exclusion.

104.    The Policy also precludes coverage for "Bodily injury" to an employee arising out of and in the course of employment or performing duties related to the conduct of the insured's business.

105.    This exclusion applies "whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages… because of the injury."

106.    This exclusion has been enforced by Pennsylvania courts to exclude coverage for conduct arguably heinous than that alleged against the Schmidt Defendants. Indeed, such clauses in general comprehensive liability policies exclude coverage for sexual harassment of employees.

107.    The Human Trafficking Plaintiffs allege that they were "employees." *See Human Trafficking Complaint at Paragraph 30.* Moreover, Defendant Gary Schmidt is identified as "an employer" under both state and federal law.

108.    The Human Trafficking Plaintiffs allege that Gary Schmidt is jointly and severally liable with Defendant Schmidt Landscaping as such. *Id. at Paragraph 26.*

WHEREFORE, MMG respectfully requests that this Honorable Court issue an Order declaring that MMG owes neither a duty to defend or indemnify the Schmidt Defendants because the well pled facts alleged in the Human Trafficking Complaint support application of the Policy provision excluding coverage for harm arising from "employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person."

### E.    Plaintiffs' Breach of Contract Claims are Excluded by the Contractual Liability Exclusion

109.    Paragraphs 1 through 108 hereof are incorporated herein by reference as if set forth in full.

110.    Count V of the Human Trafficking Plaintiffs' Complaint alleges damages for Breach of Contract. *See Exhibit A at Paragraphs 240-250.*

111.    A claim arising from a breach of contract is not an "Occurrence" as that term is defined under the Policy.

112.    Pennsylvania law does not recognize the applicability of a general liability policy to breach of contract claims.

113.    The purpose and intent of a general liability insurance policy is to protect the insured from essentially accidental injury to the person or property of another rather than coverage for disputes between parties to a contractual undertaking.

114.   A general liability policy does not provide coverage for claims in an underlying action that arises out of and relates to a contract between the parties.

115.   The important difference between contract and tort actions is that the latter lie from a breach of duties imposed by law as a matter of social policy while the former lie from the breach of the duties imposed by mutual consensus agreement between particular individuals.

116.   In this instance, were it not for an employment agreement among the parties, none of the conduct alleged in the Human Trafficking Plaintiffs Complaint could have arisen.   Indeed, from the Human Trafficking Plaintiffs' perspective, their employment relationship with the Human Trafficking Defendants is the wellspring of all the harms they allege.

117.   Even if the underlying claims alleged in the Human Trafficking Complaint are somehow deemed to constitute an occurrence under the Policy, the allegations asserted in this Complaint trigger the Contractual Liability Exclusion.

118.   This Exclusion provides that the "insurance does not apply to . . . "Bodily Injury"… for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement."

119.   In this instance, the Policy clearly excludes from coverage breaches of contract. The Policy unambiguously provides that coverage does not apply to the Schmidt Defendants' failure to perform a contract or agreement in accordance with its terms.

WHEREFORE, MMG respectfully requests that this Honorable Court issue an Order declaring that MMG owes neither a duty to defend or indemnify the Schmidt

Defendants because the well pled facts alleged in the Human Trafficking Complaint support application of the Policy provision excluding coverage for Bodily Injury"… for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement."

      **F.**     **The Negligence Counts in Plaintiffs' Complaint Do Not Trigger a Duty to Defend Because There are no Factual Allegations Alleged that are Consistent With a Negligence Claim.**

120.    Paragraphs 1 through 119 hereof are incorporated herein by reference as if set forth in full.

121.    MMG acknowledges that Plaintiffs allege, in conclusory fashion, that the Schmidt Defendants were "negligent." *See Exhibit A at Count XI.*

122.    MMG further acknowledges that, as a general rule, claims based upon negligence are covered as occurrences in a general liability policy.

123.    However, in the instant case, in Counts X and XI, the Human Trafficking Plaintiffs attempt to assert claims for "Negligent Hiring, Retention and Supervision (Count X) as well as a general non-specific claim in negligence (Count XI) without any underlying factual support for the allegations alleged.

124.    With respect to the claims asserted in Count X, these claims, by definition, arise from employment practices including "hiring, retention and supervision." *See Exhibit A at Paragraphs 303-311.*

125.    Accordingly, even if the conclusory allegations contained in Count X are deemed sufficient to support the claims asserted therein, the "Employer's Liability" Exclusion applies to exclude coverage for these claims.

126     Additionally, the "Employment practices" also applies to preclude coverage for the claims asserted in Count X.

127.    More importantly, Pennsylvania law is well-established that merely placing a label of "negligence" upon a claim does not, in and of itself, trigger a duty to defend. Instead, it is necessary to look at the factual allegations contained in the Complaint.

128.    Here, Plaintiff has pled virtually no facts in support of the negligence claim set forth in Counts X or XI. In the absence of such facts, the conclusory allegations in Plaintiffs' Complaint should be ignored. This is particularly true in light of the wealth of well pled facts supporting claims of intentional, criminal conduct arising from an employment relationship.

129.    Simply put, Plaintiffs' Complaint alleges human trafficking and various violations of criminal law in connection with employment practices giving rise to a wide variety of damages.

130.    None of this conduct sounds in negligence. Moreover, all three of the alleged "employers" of the Human Trafficking Plaintiffs, Mr. and Mrs. Schmidt and Defendant Bravo, are alleged to have personally engaged in knowing, intentional and illegal conduct in furtherance of a scheme to profit from human trafficking.

131.    Thus, the notion that the employment practices engaged in by the Schmidt Defendants could be construed as "negligent" is flatly contradicted by the well pled factual allegations contained in the Complaint.

132.    Additionally, the breadth and duration of the "*campaign of violence*" alleged by the Human Trafficking Plaintiffs is pled with specificity. In light of the direct,

knowing and criminal participation of Defendant Bravo, Gary Schmidt and Therese Schmidt in the human trafficking scheme artfully pled with detailed factual assertions, the negligent hiring and supervision claims not only lack factual support, but are rebutted by the well pled facts in the Human Trafficking Complaint that the Schmidt Defendants engaged in intentional conduct in furtherance of a human trafficking scheme for the purposes of financial gain.

133.    Nothing about these allegations suggests a mistake, or a mere error in judgment consistent with a negligence claim.

WHEREFORE, MMG respectfully requests that this Honorable Court issue an Order declaring that MMG owes neither a duty to defend or indemnify the Schmidt Defendants because the well pled facts alleged in the Human Trafficking Complaint failed to support the existence of a potentially covered claim as a matter of law.

MARGOLIS EDELSTEIN

Date:  September 15, 2021           By:  _____
ROLF E. KROLL
Attorney I.D. No. 47243
3510 Trindle Road
Camp Hill, PA   17011
PHONE: 717-760-7502
FAX: 717-975-8124
EMAIL: rkroll@margolisedelstein.com
*(Counsel for Plaintiff, MMG Insurance)*